IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| FastTrac Transportation, LLC,<br><br>                          Plaintiff,<br><br>     vs.<br><br>Pedigree Technologies, LLC,<br><br>                          Defendant. | **ORDER**<br><br>Case No. 3:22-cv-53 |

Before the Court is Defendant Pedigree Technologies, LLC's ("Pedigree") motion to dismiss Plaintiff FastTrac Transportation, LLC's ("FastTrac") complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a more definite statement filed on May 9, 2022. Doc. Nos. 5-7. FastTrac filed a response on May 26, 2022 (Doc. No. 10), and Pedigree filed its reply on June 9, 2022. Doc. No. 11. FastTrac then filed a surreply on June 27, 2022. Doc. No. 14. For the reasons set forth below, Pedigree's motion to dismiss is granted in part and denied in part, and the motion for a more definite statement is denied.

I.      **BACKGROUND**

The factual background, which the Court must accept as true for the purposes of this motion, is taken from FastTrac's complaint. Doc. No. 1. This case centers on a dispute over a contract and its terms and warranties.  Attached to the complaint is a copy of the OneView Contract Agreement (the "Agreement") between FastTrac and Pedigree. Doc. No. 1-1. On or about June 19, 2019, Pedigree and FastTrac entered into the Agreement. Id. Per the Agreement, Pedigree agreed to provide FastTrac with a total of 750 units of their forward-facing dash camera and 750 units of their Cab-Mate One electronic touchscreen tablet. Id. In addition to receiving Pedigree's dash cams

and tablets, FastTrac also gained access to Pedigree's OneView web-based platform. Id. FastTrac further agreed to pay Pedigree a recurring monthly fee for a term of 36 months. Id.

In its complaint, FastTrac alleges the purchased products did not perform as Pedigree represented, and as a result, FastTrac needed to purchase replacement products. FastTrac asserts four separate causes of action against Pedigree. Doc. No. 1, ¶¶ 23-46. Specifically, FastTrac asserts claims of breach of contract, breach of express and implied warranties, fraud and fraudulent misrepresentation, and products liability. Id. All claims are brought under North Dakota law as required by the Agreement. Doc. No. 1-1.

## II.      LAW AND ANALYSIS

Pedigree moves for dismissal of FastTrac's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Pedigree argues FastTrac should be ordered to provide a more definite statement under Federal Rule of Civil Procedure 12(e). FastTrac responds that the complaint sufficiently pleads all claims against Pedigree and that there is no need to provide a more definite statement.

### A.      Relevant Rule 12 Standards.

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id.

> Plausibility is established when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals supported by conclusory statements, however, do not suffice to meet the plausibility requirement.

Brookins Hybrid Drive Sys., LLC v. M.A.C., Inc., 3:12-CV-101, 2013 WL 12086636, at *2 (D.N.D. May 2, 2013). A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 551 U.S. 544, 555 (2007).

As noted above, the Court must accept all factual allegations in the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 681. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371-72 (8th Cir. 2017). The burden is on the moving party to prove that no legally cognizable claim for relief exists.

Rule 12(e) of the Federal Rules of Civil Procedure provides that a party may move for a more definite statement if the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Motions for a more definite statement are generally disfavored considering the liberal discovery available under the federal rules, and such motions are granted only when a party is unable to determine the issues requiring a response. Shaffer v. Eden, 209 F.R.D. 460, 464 (D. Kan. 2002) (citing Resolution Trust Corp. v. Thomas, 837 F. Supp. 354, 355 (D. Kan. 1993)). A motion for a more definite statement must be balanced with the requirement in Rule 8(a) of the Federal Rules of Civil Procedure that the pleading be "a short and plain statement of the claim showing that the pleader is entitled to relief." Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc., 882 F. Supp. 713, 726 (N.D. Ill. 1995). "Rule 12(e) provides a remedy for unintelligible

pleadings; it is not intended to correct a claimed lack of detail." <u>Ransom v. VFS, Inc.</u>, 918 F. Supp. 2d 888, 900 (D. Minn. 2013). "[W]hen examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading." <u>Id.</u>

### B.      Breach of Contract

FastTrac's first claim against Pedigree is for breach of contract. Specifically, the complaint provides:

> Pedigree has breached the Agreement by failing to comply with its obligations under the Agreement and by manifesting through its express words and actions an absolute repudiation of its obligations under the Agreement, for which it has no excuse.

Doc. No. 1, ¶ 25. Pedigree argues that this is too general an allegation to survive a motion to dismiss and that FastTrac must identify any specific provision of the Agreement they are asserting was breached. FastTrac argues that the standard is not as rigid as Pedigree contends, and that when their factual allegations are compared to the Agreement, a plausible claim for breach of contract has been stated.

A breach of contract is the nonperformance of a contractual duty when it is due. <u>Bakke v. Magi-Touch Carpet One Floor & Home, Inc.</u>, 2018 ND 273, ¶ 13, 920 N.W.2d 726, 731 (citing Restatement (Second) of Contracts § 235(2) (1981)). The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. <u>Serv. Oil, Inc. v. Gjestvang</u>, 2015 ND 77, ¶ 15, 861 N.W.2d 490, 496.

Here, the factual allegations in the complaint are sufficient to plausibly allege a breach of contract claim against Pedigree. Doc No. 1, ¶¶ 7-22. Specific to existence of the contract, the complaint alleges the following:

> Pedigree represented to FastTrac the Pedigree System would provide continuous recording from and access to the Dash Cams. Based on the express representations of and inducement by Pedigree that the Pedigree System would perform as promised, on or about May 30, 2019, FastTrac and Pedigree entered into the OneView Contract Agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit "A." Based upon the promises and representations of Pedigree, FastTrac paid Pedigree monthly payments for use of the Pedigree System starting May 30, 2019. Since the inception of the Agreement, Pedigree has been paid $714,018.69 pursuant to the Agreement.

Id. ¶ 12. FastTrac asserts that it contracted with Pedigree for a number of dash cams and the Pedigree OneView web platform. A copy of the Agreement at issue was attached to the complaint. FastTrac also alleges several ways in which the Pedigree products did not meet or satisfy certain provisions of the Agreement. And FastTrac asserts that it has been forced to purchase replacement products at a substantial cost. Id. ¶ 22. While the complaint does not cite an express promise to provide goods that work as expected,

> Promises may be inferred from the general terms or nature of a contract, though not expressly stated, and if a contract cannot be performed according to its proper interpretation unless there is some act or forbearance by one of the parties a promise may often be inferred so to act or forbear.

Restatement (First) of Contracts § 314 (1932). This is an agreement that would make little sense if Pedigree was not required to provide FastTrac with dash cams that worked properly. Moreover, FastTrac alleges that Pedigree breached section 5.4 of the Agreement (promise to provide maintenance and repair if the product is not in good working order), and that Pedigree did not comply with section 6.1 of the Agreement regarding technological support.

Put simply, FastTrac has alleged that Pedigree did not provide dash cams that complied with the certain provisions of the Agreement, that Pedigree refused to correct the issues with their products as promised in the Agreement, and as a result, it was forced to purchase replacement goods. This is sufficient factual matter, accepted as true, to state a claim for breach of contract under North Dakota law, and the Court denies Pedigree's motion to dismiss as to this claim.

Similarly, because the Court can decipher the required elements of the breach of contract claim (and the factual allegations supporting that claim), the claim is not so vague or ambiguous that Pedigree cannot reasonably prepare a response under Rule 12(e). Accordingly, the Court denies Pedigree's motion for a more definitive statement on this claim as well.

### C.    Breach of Warranties.

In addition to its breach of contract claim, FastTrac alleges breaches of express and implied warranties against Pedigree. Pedigree argues that FastTrac cannot establish breach of any express or implied warranty, and even if a warranty did exist, it has been disclaimed. "A party alleging a breach of warranty has the burden of establishing the existence of a warranty, a breach of warranty, and that the breach of warranty proximately caused the damages alleged." Eggl v. Letvin Equip. Co., 632 N.W.2d 435, 438 (N.D. 2001). The Court finds FastTrac properly alleged the breach of express warranty claim, but that any implied warranties have been effectively disclaimed.

#### 1.    Express Warranties

FastTrac alleges Pedigree made certain representations about the purchased products that became part of the basis of the bargain (and thus express warranties), including (1) the product would help FastTrac with electronic management of its vehicles and automation of driver logbook entries; (2) the product would provide FastTrac with real-time data regarding the location and activities of its vehicles and drivers; (3) the product would comply with federal regulations requiring electronic logging devices ("ELD's") in commercial trucking vehicles; (4) the product would provide continuous recording from and access to the Dash Cams; the product would accurately and reliably provide data from FastTrac vehicles to the Dash Cams; (6) the product would properly report the "status" of FastTrac's drivers; and (7) that the Dash Cams complied with federal regulations for ELD's. Doc. No. 10 ¶ 17.

Under North Dakota law, an express warranty is created through:

    a.    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes <u>part of the basis of the bargain</u> creates an express warranty that the goods shall conform to the affirmation or promise.

    b.    Any description of the goods which is made <u>part of the basis of the bargain</u> creates an express warranty that the goods shall conform to the description.

    c.    Any sample or model which is made <u>part of the basis of the bargain</u> creates an express warranty that the whole of the goods shall conform to the sample or model.

N.D. Cent. Code § 41-02-30 (emphasis added). In turn, to support a claim for breach of express warranties, the plaintiff must plausibly allege "an affirmation of fact or promise made," a "description of the goods," or a "sample or model" communicated by the seller. <u>Id.</u> The affirmation, description, or sample must also be part of the basis of the bargain. <u>Id.</u> However, to be considered part of the bargain, the alleged express warranty must be communicated in the contract. <u>See</u> <u>Fleck v. Jacques Seed Co., Prescott, Wisconsin</u>, 445 N.W.2d 649, 654 (N.D. 1989); <u>see also</u> <u>Evenson v. Quantum Indus., Inc.</u>, 2004 ND 178, ¶ 11, 687 N.W.2d 241 ("All preliminary negotiations, conversations, and verbal agreements are merged into and superseded by the subsequent written contract.").

Here, the Agreement does not contain any of the representations noted above, and as a result, those representations cannot support a claim for breach of express warranties. Any claims regarding statements made by Pedigree prior to the Agreement are more appropriately considered under the fraudulent misrepresentation count, not as an express warranty. <u>See e.g.</u>, <u>Golden Eye Res., LLC v. Ganske</u>, 2014 ND 179, ¶ 18, 853 N.W.2d 544, 551 (oral representations prior to contracting considered with regard to fraud, but not to contradict or supplement terms of the contract).

That being said, FastTrac does allege that Pedigree breached the hardware warranty contained in section 5.3 of the Agreement. The provision reads as follows:

> 5.3 **Hardware Warranty**. Pedigree shall provide a limited warranty on new Hardware provided to the Client by Pedigree, for a Warranty Period of one (1) year from date of Shipment to Client's shipping address. During the Warranty Period, the Hardware shall be repaired by Pedigree (or its third party vendor) due to issues related to materially defective materials, materially faulty workmanship, or incapability of connecting to Communications Networks. These obligations shall not apply to: (i) hardware normally consumed in operation such as fuses, cables, antennae or mounting brackets; or (ii) defects which, due to no fault of Pedigree, are the result of: (a) Client's unauthorized or improper use of the Hardware (improper operation and/or use with other equipment); (b) detrimental exposure to weather, water, and/or fire; (c) involvement in any accident, explosion, or Act of God; (d) tampering, alteration or repair by any party other than Pedigree or its authorized installers without Pedigree's prior written consent; or (e) broken seal, improper storage, installation or implementation, alteration to external antenna by Client.

In Paragraph 17 of the complaint FastTrac alleges:

> FastTrac has repeatedly sought technical assistance from Pedigree to find a remedy for the flaws in the Pedigree System. Instead of correcting the issues with the Pedigree System, Pedigree has failed to provide any meaningful response. Pedigree's technical support is unavailable during crucial hours of the day, its responses to requests from FastTrac have been insufficient, and Pedigree's own management has refused or is unwilling to take any corrective action. Pedigree failed to timely respond to service requests and often failed to respond at all.

Further, paragraphs 20 and 21 of the complaint allege:

> After numerous attempts to work through the issues in good faith with Pedigree, FastTrac sent Pedigree a demand to cure on August 13, 2021.

> Not only did Pedigree fail to cure its own defects, but it also attempted to foist the blame on FastTrac citing unsubstantiated claims of lack of "product training" and recommending "effective change management."

While paragraphs 17, 20, and 21 of the complaint do not reference the hardware warranty, there are sufficient facts, when taken with section 5.3 of the Agreement, for the Court to conclude that a plausible breach of express warranty claim is alleged.

Even so, Pedigree argues it effectively disclaimed that warranty. Under the North Dakota

Uniform Commercial Code ("UCC"), all warranties can be excluded or modified. N.D. Cent. Code

§ 41–02–33. The disclaimer language of the contract that applies to the hardware warranty is as

follows:

> PEDIGREE EXPRESSLY DISCLAIMS ANY AND ALL OTHER PROMISES
> OR REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE
> WHETHER EXPRESS [OR] IMPLIED
>
> ***
>
> PEDIGREE DOES NOT WARRANT THAT THE LICENSED TECHNOLOGY
> OR ANY OTHER INFORMATION, MATERIALS, TECHNOLOGY, OR
> SERVICES PROVIDED UNDER THIS AGREEMENT WILL MEET CLIENT'S
> REQUIREMENTS OR THAT THE OPERATIONS THEREOF WILL BE
> UNINTERRUPTED OR ERROR-FREE

While any warranty may be disclaimed or modified, this authority is not without limitation. Along

those lines, North Dakota Century Code section 41-02-33 provides:

> Words or conduct relevant to the creation of an express warranty and words or
> conduct tending to negate or limit warranty shall be construed whenever reasonable
> as consistent with each other; but subject to the provisions of this chapter on parol
> or extrinsic evidence (section 41-02-09), negation or limitation is inoperative to the
> extent that such construction is unreasonable.

In other words, an express warranty and a limitation or negation of said warranty can only co-exist

to the extent such as construction is reasonable. The Court cannot reconcile as reasonable a contract

that provides a warranty to repair hardware that then purports to effectively eliminate any duty to

repair faulty hardware, as Pedigree suggests. When a warranty and disclaimer cannot be reasonably

reconciled, the language of the express warranty controls. See DJ Coleman, Inc. v. Nufarm

Americas, Inc., 693 F. Supp. 2d 1055, 1067 (D.N.D. 2010). Accordingly, at this stage, and

accepting FastTrac's allegations true, FastTrac has plausibly alleged a breach of express warranty

claim as to the hardware warranty, and the Court denies Pedigree's motion to dismiss as to the express warranties claim.

### 2.   **Implied Warranties**

Pedigree next moves to dismiss the FastTrac's breach of implied warranties claim, arguing there are no allegations of a sale or that Pedigree is a merchant with respect to the goods sold. In its response, FastTrac opposed dismissal of their implied warranty claim, but provided no analysis of how it had plausibly stated a claim for breach of implied warranties. Count II of the complaint provides that "[d]ue to failures of the Pedigree System, Pedigree has breached [an implied] warrant[y] that the Pedigree System is fit for its intended purposes." Doc. No. 1 ¶ 27.

North Dakota codified the UCC's implied warranties—the warranty of merchantability and warranty of fitness for a particular purpose—in North Dakota Century Code sections 41-02-31 and 41-02-32. These statutes provide in relevant part:

> 1.    Unless excluded or modified (section 41-02-33), a warranty that the goods shall be merchantable is implied in a contract for their sale if the <u>seller</u> is a <u>merchant</u> with respect to goods of that kind[.]
>
> ***
>
> If the <u>seller</u> at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the <u>seller's</u> skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.D. Cent. Code §§ 41-02-31(1), 41-02-32 (emphasis added). To sustain a claim for breach of an implied warranty, FastTrac must plausibly allege that Pedigree sold the goods in question and that they are a merchant with respect to the goods. "A 'Sale' consists in the passing of title from the seller to the buyer for a price. N.D. Cent. Code § 41-02-06(1)(d). A "merchant" is a party who deals in goods of the kind or otherwise represents as having knowledge or skill peculiar to the practices or goods involved in the transaction. N.D. Cent. Code § 41-02-04.

As to the existence of a sale between Pedigree and FastTrac, the complaint alleges the following:

> Pedigree offered to sell FastTrac its dual-view CameraView Dash Cam system (the "Dash Cam"), including licenses of its fleet management software system with diagnostics.
>
> FastTrac and Pedigree entered into the OneView Contract Agreement (the "**Agreement**"). A copy of the Agreement is attached as **Exhibit "A."** Based upon the promises and representations of Pedigree, FastTrac paid Pedigree monthly payments for use of the Pedigree System starting May 30, 2019. Since the inception of the Agreement, Pedigree has been paid $714,018.69 pursuant to the Agreement.

Doc. No. 1, ¶¶ 9, 12. While the complaint does not literally state that a sale occurred, the Agreement suggests otherwise, and because FastTrac alleges Pedigree offered to sell goods, there was an agreement reached, and then provided money in exchange for the goods in question—the Court concludes a sale has been plausibly alleged. As to whether Pedigree has been alleged to be a merchant, the complaint alleges:

> Pedigree is a provider of software and hardware solutions which Pedigree claims (and regularly advertises) are designed to help companies track, monitor, and diagnose high-value assets and collaborate with mobile workers through Pedigree's proprietary "OneView" platform. According to Pedigree's website, the Pedigree system provides companies with "complete visibility into their operations, allowing them to make better business decisions."

Doc. No. 1, ¶ 8. Again, while not stated precisely, there are factual allegations that Pedigree deals in the specific goods that were sold to FastTrac, and that they have held themselves out to have knowledge and skill specific to the goods sold. In turn, the Court concludes FastTrac has plausibly alleged that Pedigree is a merchant.

However, the analysis does not end here. Pedigree goes on to argue that even if they engaged in a sale and are technically a merchant, they have disclaimed any implied warranties. North Dakota Century Code section 41-02-33 governs the exclusion or modification of warranties and states:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

Conspicuous is defined as, "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." N.D. Cent. Code § 41-01-09(2)(j). The relevant statute also provides that conspicuous terms include the following:

> (1)     A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size;
>
> and
>
> (2)     Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

N.D. Cent. Code § 41-01-09(2)(j).

The relevant disclaimer provision in Agreement, which is attached to the complaint, reads as follows:

> 8.1 **DISCLAIMER.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE HARDWARE, THE LICENSED TECHNOLOGY AND ANY OTHER MATERIALS, SOFTWARE, DATA AND/OR SERVICES PROVIDED BY PEDIGREE ARE PROVIDED "AS IS" AND "WITH ALL FAULTS," AND **PEDIGREE EXPRESSLY DISCLAIMS ANY AND ALL OTHER PROMISES, REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF NON-INFRINGEMENT, NON-INTERFERENCE, VALUE OR ACCURACY OF DATA, AS WELL AS ANY WARRANTIES OF MERCHANTABILITY, SYSTEM INTEGRATION, FITNESS FOR A PARTICULAR PURPOSE, FITNESS FOR USE FOR LIFE SUPPORT OR EMERGENCY SITUATIONS OR THE ABSENCE OF ANY DEFECTS THEREIN, WHETHER LATENT OR PATENT.** NO WARRANTY IS MADE BY PEDIGREE ON THE BASIS OF TRADE USAGE, COURSE OF DEALING OR COURSE OF PERFORMANCE. PEDIGREE DOES NOT WARRANT THAT THE LICENSED TECHNOLOGY OR ANY OTHER INFORMATION,

MATERIALS, TECHNOLOGY OR SERVICES PROVIDED UNDER THIS AGREEMENT WILL MEET CLIENT'S REQUIREMENTS OR THAT THE OPERATION THEREOF WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT ALL ERRORS WILL BE CORRECTED. CLIENT ACKNOWLEDGES THAT PEDIGREE'S OBLIGATIONS UNDER THIS AGREEMENT ARE FOR THE BENEFIT OF CLIENT ONLY.

Doc. No. 1-1. Here, the disclaimer provision is conspicuous. The provisions disclaiming warranties and limiting liability are in capital letters, while the remainder of the Agreement is generally in standard font. The "Disclaimer" heading is also in capital letters with boldface type. Further, above the disclaimer provision is a heading that states, "**DISCLAIMERS, EXCLUSIONS AND LIMITATION OF LIABILITY**." This heading is also in boldface type and all capital letters. The Court finds these actions are sufficient to put FastTrac on notice of Pedigree's disclaimer of warranties. See e.g., Everkrisp Vegetables Inc. v. Tobiason Potato Co., 870 F. Supp. 2d 745, 754 (D.N.D. 2012) (terms are sufficiently conspicuous to disclaim warranties when the nature of the wording draws the reader's attention to them).

To disclaim an implied warranty of merchantability, the disclaimer must specifically mention "merchantability." N.D. Cent. Code § 41–02–33(2). Here, the contractual provision specifically notes it is disclaiming any warranty of merchantability. To disclaim an implied warranty of fitness, the disclaimer must be in writing and conspicuous. Id. Here, as discussed, the disclaimer provision was conspicuous. The disclaimer provision also mentioned disclaiming any warranty of fitness. So, even accepting FastTrac's allegations as true, on its face the complaint fails to plausibly allege a breach of implied warranties claim, as those warranties were properly disclaimed under North Dakota law.  Accordingly, the Court grants Pedigree's motion to dismiss for failure to state a claim as to FastTrac's breach of implied warranties claim.

D.       **Fraud/Fraudulent Misrepresentation.**

Pedigree next moves to dismiss FastTrac's claims for fraud and fraudulent misrepresentation, arguing FastTrac has not satisfied the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. FastTrac argues they have satisfied the particularity requirement and have pleaded their fraud claims sufficiently. The Court agrees with Pedigree.

A party's consent to a contract is not lawful if obtained through fraud. N.D. Cent. Code §§ 9-03-01 and 9-03-03(3). In determining whether consent to a contract was obtained by fraud, "actual fraud" means acts intended to deceive another party or to induce the other party to enter into the contract, including the suggestion as a fact of that which is not true by one who does not believe it to be true, the suppression of that which is true by one having knowledge or belief of the fact, a promise made without any intention of performing it, or any other act fitted to deceive. N.D. Cent. Code § 9-03-08. Constructive fraud is any situation where a party gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice, regardless of intent. N.D. Cent. Code § 9-03-09. "A party who has been induced to enter a contract by fraudulent misrepresentations may elect to rescind the contract, or to affirm the contract and recover damages." Holverson v. Lundberg, 2016 ND 103, ¶ 15, 879 N.W.2d 718, 723.

A heightened pleading standard applies when a complaint alleges fraud. See Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." H & Q Props., Inc. v. Doll, 793 F.3d 852, 856 (8th Cir. 2015) (citation omitted). To satisfy Rule 9(b), the party alleging fraud "must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478

F.3d 908, 917 (8th Cir. 2007) (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)). The primary purpose of this particularity requirement is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). The Court concludes FastTrac has not pleaded sufficient factual allegations for Pedigree to respond and prepare a defense to a fraud claim.

> The alleged fraudulent conduct specifically attributed to Pedigree reads as follows:
>
> FastTrac and Pedigree entered into the Agreement, attached as Exhibit A.
>
> Pedigree had a duty to accurately represent the functions of the Pedigree System and the support that would be provided to FastTrac in exchange for FastTrac's monthly payment sunder the Agreement.
>
> Prior to entering into the Agreement, Pedigree misrepresented the quality, usability, effectiveness, viability, and ability of the Pedigree System.
>
> FastTrac reasonably relied upon Pedigree's misrepresentations as an inducement to entering into the Agreement. Had FastTrac been aware that Pedigree's representations were false at the time they were made, FastTrac would not have entered into the Agreement.
>
> Pedigree's misrepresentations are material because they relate to substantive aspects of the Pedigree System that are critical to the successful operation of FastTrac's business and relationship with its clients.
>
> Pedigree's misrepresentations, even if believed to be accurate by Pedigree, were a positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true, constituting fraud/misrepresentation under North Dakota law, including NDCC § 9-03-08(2).
>
> In addition, upon information and belief, Pedigree knew of and actively concealed a material defect in the Pedigree System from FastTrac whereby certain wireless connections could not and would not work properly between the hardware and the software, constituting fraud/misrepresentation under North Dakota law, including NDCC § 9-03-08(3).
>
> As a result of the Pedigree's misrepresentations, FastTrac has been prejudiced and continues to be financially damaged in an amount to be proven at trial.

Doc. No. 1 ¶¶ 29-36. As Pedigree notes, these allegations contain no detail with respect to the substance of the alleged misrepresentations. Standing alone, these assertions are conclusory and insufficient to state a claim. However, the complaint also specifically alleged the following misrepresentations in the background section of the complaint:

(1)     the product would help FastTrac with electronic management of its vehicles and automation of driver logbook entries;

(2)     the product would provide FastTrac with real-time data regarding the location and activities of its vehicles and drivers;

(3)     the product would comply with federal regulations requiring electronic logging devices ("ELD's") in commercial trucking vehicles;

(4)     the product would provide continuous recording from and access to the Dash Cams; the product would accurately and reliably provide data from FastTrac vehicles to the Dash Cams;

(5)     the product would properly report the "status" of FastTrac's drivers; and

(6)     that the Dash Cams complied with federal regulations for ELD's.

Doc. No. 1 ¶ 17. Without question, FastTrac alleges that Pedigree made specific misrepresentations regarding the quality and performance of their products. Nevertheless, these allegations are insufficient to sustain a claim for fraud. While FastTrac has pleaded the substance of the alleged statements, the complaint is silent as to the who, when, and where. When a fraudulent statement is alleged, the specific representative of the company who made the claim should be named. See Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 898 (8th Cir. 2009); see also U.S. ex rel. Joshi, 441 F.3d at 556. Here, FastTrac has only alleged that Pedigree made the statement, which is insufficient. Further, while the complaint indicates the alleged statements were made prior to contracting, the time and place of the alleged statement must be provided. See Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982), on reh'g, 710 F.2d 1361 (8th Cir. 1983); see also Noble Sys. Corp. v. ACI Telecentrics, Inc., No. CV 06-3470 (MJD/AJB), 2007 WL 9735468, at *6 (D. Minn.

16

Jan. 22, 2007). FastTrac's complaint is silent as to the date and location of any alleged misrepresentations. Accordingly, fraud has not been pleaded with the requisite particularity under Federal Rule of Civil Procedure 9(b), and the Court grants Pedigree's motion to dismiss the fraud/fraudulent misrepresentation claim in count III.

> E.      **Products Liability**

Finally, Pedigree moves to dismiss FastTrac's products liability claim arguing the complaint does not allege "personal injury, death, or property damage" as required by North Dakota law. FastTrac responds and argues they have sufficiently pleaded the elements required to sustain a claim for products liability. The Court again agrees with Pedigree.

North Dakota Century Code section 28-01.3-01(2) defines product liability action and provides as follows:

> "Product liability action" means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of <u>personal injury, death, or property damage</u> . . . .

N.D. Cent. Code § 28-01.3-01(2) (emphasis added). While neither party has specifically addressed the economic loss doctrine, its theory underlies the statutory definition of a product liability action. In <u>Clarys v. Ford Motor Co.</u>, the North Dakota Supreme Court discussed the economic loss doctrine as it applies to product liability actions and stated as follows:

> The economic loss doctrine recognizes the distinction between the bargain expectation interests protected by contract law under the Uniform Commercial Code and the safety interests protected by tort law. The distinction applies to consumer, as well as commercial, purchasers. When a defective product causes damage to persons or other property, the interest at stake is health and safety, irrespective of whether the initial purchase was a consumer or commercial transaction. Those safety interests are protected under tort law, which allows recovery by injured plaintiffs against a seller or manufacturer of an unreasonably dangerous defective product. N.D.C.C. ch. 28-01.3. When, however, a product is defective and damages only itself, the interest at stake is the purchaser's expectation of receiving the bargained-for product. That interest is protected by the remedies

17

> provided under Article 2 of the Uniform Commercial Code, N.D.C.C. ch. 41-02.
> The Code provides a vast array of remedies, including recovery of consequential
> damages, when a product fails to meet consumer expectations. <u>See</u> N.D.C.C. § 41-
> 02-94 (incidental and consequential damages recoverable from breaching seller).

1999 ND 72, ¶ 19, 592 N.W.2d 573, 578-79. In short, as stated in <u>Clarys</u>, "tort actions under the [products liability] statute can be brought when a defective product causes damage to persons or other property, but are not available to any plaintiff when only the defective product has been damaged." <u>Id.</u> ¶ 17.

Here, FastTrac has not alleged any damage to a person or property other than the alleged defective product.[1] The only damages specifically pleaded in the complaint are related to replacement cost. There are no allegations in the complaint suggesting that deficiencies in Pedigree's products somehow damaged FastTrac property. Consequently, the complaint fails to plead facts sufficient to plausibly allege a products liability claim under North Dakota law. As such, the Court grants Pedigree's motion to dismiss that claim.

## III.   <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, Pedigree's motion to dismiss (Doc. No. 16) **GRANTED IN PART** and **DENEID IN PART**. Pedigree's motion to dismiss is granted, without prejudice, as to the claims for breach of implied warranties, fraud/fraudulent misrepresentation, and products liability. The motion is denied as to FastTrac's claims for breach of contract and breach of express warranties.

---

[1] FastTrac cites to a number of cases from different jurisdictions, but notably, these cases each involve an allegation of personal injury. <u>Turnage v. Oldham</u>, 346 F. Supp. 3d 1141 (W.D. Tenn. 2018) (unlawful detainment); <u>Est. of Alex through Coker v. T-Mobile US, Inc.</u>, 313 F. Supp. 3d 723 (N.D. Tex. 2018) (death of an individual).

**IT IS SO ORDERED**.

Dated this 1st day of August, 2022.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court