IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| FASTTRAC TRANSPORTATION, LLC § § Plaintiff, § § v. § § PEDIGREE TECHNOLOGIES, LLC § § Defendant. § | Case No. 3:22-CV-00053-PDW-ARS |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL OR FOR RECONSIDERATIN OF DISCOVERY**

Plaintiff, FastTrac Transportation, LLC ("FastTrac"), files this Reply Brief in Support of its Motion to Compel or For Reconsideration of Discovery, as follows:

**A.   Pedigree has proven FastTrac's assertion that the source code is the sole objective method to analyze the Pedigree System's capabilities**

1.   <u>Pedigree's case law</u>. Pedigree's support for the premise that the source code is not relevant or necessary to FastTrac's fraudulent misrepresentation claims is flawed.  In *JKSoft, Inc.*,[1] the Court denied a request for production of source code. However, in *JKSoft,* Plaintiff was suing Defendant for stealing Plaintiff's source code.[2] In *JKSoft*, the Defendant *already possessed* Plaintiff's source code and was seeking to compel Plaintiff to produce *additional* source code (beyond what Defendant already pirated).[3] Despite this, the Plaintiff in *JKSoft* was willing to produce its source code up to the time that Defendant stole it in 2013.[4] Unlike *JKSoft*, Pedigree is unwilling to produce *any* version or snapshot of its source code, and circumstances have changed drastically since FastTrac's request and this Court must compel production of all or select portions

---

[1] *JKSoft, Inc.,* No. CV 18-199 (WJM), 2020 WL 1951624, at *1 (D.N.J. Apr. 23, 2020).
[2] *Id.* at *1.
[3] *Id.*
[4] *Id.* at *2.

of the source code. Specifically: (1) DeCock's deposition was taken showing that Pedigree's foundational opinions are derived from an individual without any qualifications t on this topic[5], and (2) Pedigree's attempts to provide alternative methods to provide FastTrac with a reliable substitute for the source code.[6] This Court must now re-examine the necessity of the source code.

2. Pedigree also relies on *Motorola Sols., Inc.*[7] However, in *Motorola*, the source code request was denied because, again, the party seeking its production *already possessed* the source code.[8] The Court held because the requesting party "examined competitor's source code, spent months analyzing that code, and obtained [sic] evidence of copyright infringement," the requesting party already had enough evidence to satisfy its copyright infringement claim.[9] Unlike the requesting parties in *JKSoft* and *Motorola,* FastTrac does not possess Pedigree's source code, has never been given an opportunity to examine it, and does not already have "mountains of evidence" to satisfy its fraudulent misrepresentation claim.[10] The source code is essential and proportional to the needs of this case.

3. <u>Pedigree's "Release Notes" are subjective, fluid documents drafted per DeCock's subjective interpretation of the Pedigree System's features</u>. Pedigree argues that its Release Notes are an adequate, objective substitute for the source code. Those documents—spreadsheets created by DeCock mere days before they were sent to FastTrac—are not a sufficient substitute for Pedigree's source code. DeCock's own testimony contradicts the substance of the Release Notes.

---

[5] Pedigree incorrectly states FastTrac argued on January 27, 2023, that the Court should disregard Mr. DeCock's declaration. It was not until after Mr. DeCock's December 13, 2023, deposition that FastTrac was first aware of Mr. DeCock's complete lack of personal knowledge on the topic. Pedigree also heavily relies on the Court's statement of March 7, 2023, that Mr. DeCock was "sufficiently qualified to address the "tasks a software developer would perform…" (Dkt. 48, pg. 12). Of course, this was before Mr. DeCock was examined under oath and it was revealed that he lacked the necessary knowledge or qualifications to provide such opinions. This is precisely why the Court is empowered to reconsider this request. *See also*, Declaration of Mahdi Eslamimehr, PhD attached as Exhibit "A".
[6] Dkt. 90-1 & 90-2.
[7] *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 365 F. Supp. 3d 916, 922 (N.D. Ill. 2019).
[8] *Id.* at 922–923.
[9] *Id.* at 923.
[10] *Id.* at 926.

4.     FastTrac deposed DeCock on December 13, 2023. During his deposition, DeCock was asked how he would determine whether Pedigree's software had a certain feature or capability at a certain time. DeCock gave a well-coached answer that he "would look at Pedigree's release notes on what was released at different time frames."[11] Based on this testimony and FastTrac's continued willingness to seek a workable resolution, FastTrac's counsel exchanged emails with Pedigree's counsel.[12]

5.     Pedigree claims it produced a sufficient alternative to its source code and FastTrac's questions about the functionality of the Pedigree System "have been answered."[13] This is false. Pedigree points to emails exchanged between counsel in which two Excel spreadsheet attachments are provided and are claimed to be Pedigree's "Release Notes." A review of the Pedigree Release Notes meta data reveals the documents were created by Josh DeCock just days before they were sent to FastTrac. The first spreadsheet Pedigree sent FastTrac on December 26, 2023, shows it was created on December 15, 2023, at 2:26pm by Josh DeCock.[14] Pedigree's counsel was asked to reconcile the fact this spreadsheet was created only days ago by DeCock with Pedigree's assertion that the spreadsheet was "part of a regular database of features and bugs related to the software, maintained in the ordinary course of business."[15] FastTrac's counsel had additional questions about the authenticity and reliability of the Release Notes, such as why they were so different in format and content from the Release Notes that are publicly available on Pedigree's website, and why the Release Notes showed only two (2) months' worth of data (from August 7, 2019 to October 16, 2019). FastTrac requested the list of features from May 29, 2019, through March 29,

---

[11] Dkt. 85-3, DeCock Dep. 110:5-10; 169:3-25.
[12] Dkts. 90-1 & 90-2.
[13] Response, ¶ 28.
[14] *See* screenshot attached as Exhibit "A."; Dkt. 90-1 – Exhibit A to Defendant's Response.
[15] Dkt. 90-2 – Exhibit B to Defendant's Response.

2022.[16]

6.      In response, Pedigree produced a second spreadsheet on January 24, 2024, which also showed it was created by DeCock two days prior, on January 22, 2024.[17] These "Release Notes" do not align with Mr. DeCock's deposition testimony. For example, the first line of the second spreadsheet states that the feature "stream video and store to android tablet/phone" was "started" May 28, 2019, and "ended" June 12, 2019.[18] Mr. DeCock testified in his deposition that Pedigree did not have the ability to stream video and store to android tablet/phone on May 29, 2019.[19]

7.      <u>Pedigree insists Josh DeCock's Declaration is reliable despite his subsequent deposition testimony proving otherwise.</u> Pedigree argues because this Court considered DeCock to be "sufficiently qualified" to address the source code issue in March 7, 2023, that the Court cannot reconsider DeCock's qualifications in light of his deposition taken on December 13, 2023. The March 7, 2023, Order found DeCock qualified at that time because "DeCock's declaration describes him as responsible for overseeing development and maintenance of Pedigree's source code and describes the tasks a software developer would perform in preparing the source code for review by a third party."[20]

8.      DeCock testified that the opposite is true—he is not a software developer, not involved in developing software at Pedigree, and he does not know the most rudimentary information about Pedigree's source code: where it is stored.[21] At the time of the Court's March 7 and July 7, 2023, Orders, neither the Court, nor FastTrac, had any reason to believe that DeCock

---

[16] Dkt. 90-2.
[17] See the screenshot attached has Exhibit "B."; Dkt. 90-3 – Exhibit "C" to Defendant's Response.
[18] Dkt. 90-3.
[19] Dkt. 85-3, DeCock Dep. 37:24-38:21.
[20] Dkt. 48, pg. 12.
[21] (DeCock Dep. 105:8–106:11; 107:4–108:14).

was wholly unqualified to make the statements in his declaration. Evidence unfolds in litigation which can change the circumstances of a previous discovery order.[22]

9. <u>DeCock's statements regarding the time and cost of producing source code is absurd and defies standard industry practice</u>. Pedigree claims that—based on DeCock's deposition testimony— "providing FastTrac with a snapshot of two separate dates would require a software engineer to rebuild the code so that it could be run as it existed on those dates."[23] According to Dr. Eslamimehr, "At no point would Quandary Peak[24] suggest that the source code needs to be rebuilt to running order to confirm specific features and functionalities at a particular point in time."[25] In fact, it would take Pedigree a mere few clicks of a button to prepare its code:

> Production of source code in software litigation matters, even, as Mr. DeCock has indicated, '1.5 million lines of code,' is a straightforward task **akin to downloading a zipped folder**…. That zip folder could then either be emailed directly to Quandary Peak, shared via an online storage platform, or sent on a USB drive via FedEx to the Quandary Peak offices.[26]

10. DeCock further states in his declaration that it would take Pedigree "five to ten days working eight hours a day," or $8,000 to $20,000 (if Pedigree paid its own employees an hourly rate of $250) to "set up the conditions necessary for third-party review."[27] Dr. Eslamimehr, who is truly qualified about such matters, dispels this fallacy:

> There is no reason for the level of time investment and expense Mr. DeCock has argued to present the source code for analysis. On the contrary, if Pedigree uses a version control system, like GitHub, BitBucket, or even an internal version control system, it should take **less than an hour** to capture the appropriate versions from the source code. From there, it would take a developer a **maximum of one hour** to clone/download or duplicate those source code versions onto a USB drive or secure FTP site, and finally, a **maximum of an hour** to either confirm and transfer the FTP site

---

[22] *Michael D. v. GMAC Mortg., LLC*, 763 F. Supp. 2d 1091, 1114 (W.D. Mo. 2011).
[23] Response, ¶ 37 (citing DeCock Dep. 117:18–118:8).
[24] Quandary Peak Research is the software consulting group that Dr. Mahdi Eslamimehr works for that provides computer and software expertise to companies, universities, and attorneys. (Eslamimehr Decl. ¶1).
[25] Ex. "C", Eslamimehr Decl. ¶ 6.
[26] *Id*. at ¶ 5 (emphasis added).
[27] (Dkt. 43, ¶ 12).

information to counsel or FedEx the physical drive to Quandary Peak.[28]

11. As for the "Release Notes" Pedigree provided, Dr. Eslamimehr states in no uncertain terms: "In terms of what those spreadsheets actually reveal about the software in question, I can strongly say that I have never, in 70+ litigation matters, seen such an incomplete and poor production of software artifacts."[29]

**B. The Court's March 7, 2023, and July 7, 2023, Orders must be reconsidered in light of newly discovered evidence and to prevent a manifest injustice**

12. <u>Reconsideration standard</u>. The Federal Rules of Civil Procedure do not include a 'motion to reconsider.'[30] Some courts construe such motions as either a Rule 59(e) motion to alter or amend the judgment, or a Rule 60(b) motion for relief from a "final judgment, order, or proceeding." *Id*. The standard for reconsideration of an interlocutory order is less clear.[31] Pedigree cites *Broadway v. Norris* to argue that Rule 60 provides the standard for review.

13. *Broadway* only addressed a standard for review of a district court's order denying a motion to reconsider a motion to dismiss based on qualified immunity. *Broadway* did not address the standard for a motion to reconsider an interlocutory order.[32] *Broadway* did not hold all motions for reconsideration should be treated as Rule 60 motions. The *Broadway* ruling was narrow and limited to a reconsideration of a denial of defendants' motion to dismiss based.[33]

14. At least six other Eighth Circuit district courts have criticized *Broadway's* ruling for "failing to recognize a district court's inherent authority to reconsider interlocutory orders, authority which as a practical matter a district court needs in order to modify orders in response to

---

[28] Ex. "C", Eslamimehr Decl. ¶ 7 (emphasis added).
[29] Ex. "C", Eslamimehr Decl. ¶ 4.
[30] *Keys v. Wyeth, Inc.*, No. C08–1023, 2009 WL 1010064, at *1 (N.D. Iowa April 14, 2009).
[31] *Vosdingh v. Qwest Dex, Inc.*, No. Civ. 03–4284 ADM/AJB, 2005 WL 1323007, at *1 (D. Minn. June 2, 2005).
[32] *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, Civ. No. 3:09-5078-DGK, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010).
[33] *Id.*

the changing circumstances of a lawsuit before it."[34]

15.     The Federal Rules do bestow authority to revise interlocutory orders.[35] A district court is afforded "wide discretion" in its handling of discovery matters.[36] This is a discovery dispute. In light of Rule 45 and the criticism of *Broadway*'s "dicta," this Court is not restricted to a Rule 60(b) analysis of this issue.[37] While *Discount Tobacco* utilized two criteria for reconsidering an interlocutory order,[38] it did not discuss its application to discovery matters. It is clear from *Cook v. Kartridg* that a district court has authority to reconsider an interlocutory discovery order at the court's discretion.

16.     <u>If the Court uses the Rule 59 or Rule 60 standard to reconsider its March 7, 2023, Order, FastTrac has demonstrated reconsideration is essential.</u> The purpose of a motion to alter or amend is to present newly discovered evidence, correct a clear error of law or fact, or prevent a manifest injustice.[39] By refusing to allow a third-party examination of Pedigree's source code, FastTrac would be unjustly denied its opportunity to gather evidence in support of its fraudulent misrepresentation claim.

17.     At the time of the Court's March 7 and July 7, 2023, Orders, the Court had no evidence to review that could contradict the statements DeCock made in his declaration. Since

---

[34] *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, 2010 WL 3522476, at *2; *Garrett v. Albright*, No. 4:06–CV–4137–NKL, 2008 WL 268993, at *2 n.2 (W.D. Mo. Jan. 30, 2008); *Laird v. Stilwill*, 982 F. Supp. 1346, 1354 (N.D. Iowa 1997) (holding that a district court's discretion to amend an interlocutory order is greater than its power to amend a final judgment); *see also Vosdingh*, 2005 WL 1323007, at *1 (holding that "[s]ince this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not.").

[35] *See* Fed. R. Civ. P. 45 (a district court has inherent authority to revise "any order or other decision" adjudicating "fewer than all the claims... and may be revised at any time before entry of judgment...").

[36] *Cook v. Kartridg Pak Company*, 840 F.2d 602, 604 (8th Cir. 1988).

[37] *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, 2010 WL 3522476, at *2.

[38] Whether the moving party demonstrated (1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error. 2010 WL 3522476, at *2.

[39] *Corretjer Farinacci v. Picayo*, 149 F.R.D. 435 (D.P.R. 1993); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522 (E.D. Pa. 1992).

those orders, DeCock has been exposed as distinctly not qualified, and Pedigree attempted and failed—to provide FastTrac with an objective, reliable alternative to Pedigree's source code.

Respectfully submitted,

By: */s/ William A. Gage, Jr.*
William A. Gage Jr. *
Tatiana P. Lutomski *
717 Texas Ave., 27th Floor
Houston, Texas 77002
Phone: (832) 415-1801
* *Admitted to the United States District Court for the District of North Dakota*

By: */s/ Timothy O'Keffe*
Timothy O'Keffe (ND ID. #05636)
Tatum O'Brien (ND ID. #05985)
720 Main Avenue
Fargo, North Dakota 58103
Phone: (701) 235-8000
**ATTORNEYS FOR PLAINTIFF**